UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., Plaintiff, v. U.S. DEPARTMENT OF STATE, Defendant. | Civil Action No. 13-cv-772 (CKK) |

**MEMORANDUM OPINION**
(September 5, 2019)

This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiff Judicial Watch, Inc. made to Defendant United States Department of State in 2011. Plaintiff requested documents related to, among other things, former President Bill Clinton's speaking engagements and financial ties. When Plaintiff filed suit seeking responsive information, Defendant provided Plaintiff with non-exempt parts of responsive documents on a rolling basis over nearly four years. The parties' negotiations resulted in the release of further information. Redactions to seven of former Secretary of State Hillary Clinton's daily schedules remain at issue.

Defendant contends that these redactions are appropriate under FOIA Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Plaintiff contends this exemption does not apply and that the information is being wrongly withheld.

Currently before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as it currently stands, the Court **GRANTS-in-PART and HOLDS-in-**

---

[1] The Court's consideration has focused on the following documents:

- Mem. of P&A in Supp. of Def.'s Mot. for Summ. J., ECF No. 51 ("Def.'s Mem.");

1

**ABEYANCE-in-PART** Defendant's [51] Motion for Summary Judgment and **DENIES-in-PART and HOLDS-in-ABEYANCE-in-PART** Plaintiff's [52] Cross-Motion for Summary Judgment. The Court concludes that, with one potential exception, the redactions are exempt from FOIA under Exemption 5 due to the presidential communications privilege. The Court shall give Defendant an opportunity to submit further information *ex parte* about one redaction before the Court issues a final decision as to that redaction.

## I. BACKGROUND

On May 2, 2011, Plaintiff made a FOIA request to Defendant that sought, among other things, documents regarding former President Clinton's "speech schedule" and "personal or charitable financial relationships with foreign leaders and governments." Stmt. of Material Facts, ECF No. 51-3 ("Def.'s Stmt."), ¶¶ 1-2 (summarizing portion of request). When Defendant failed to produce responsive records, Plaintiff filed this case on May 28, 2013, in an effort to obtain them. *Id.* ¶ 3. Thereafter the agency made rolling productions of non-exempt material every six weeks from October 21, 2013, through August 29, 2017. *Id.* ¶ 4. The total production amounted to 1,183 unredacted documents and portions of 1,777 more, while Defendant withheld 17 documents in their entirety. *Id.* ¶ 5. Although Plaintiff has not challenged the adequacy of the search, nor the application of exemptions to most of the withheld material, Plaintiff disagrees with Defendant's efforts to withhold parts of seven documents under FOIA Exemption 5. *Id.* ¶¶ 6-7.

---

- Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J., ECF No. 52 ("Pl.'s Combined Opp'n & Mem.");
- Mem. of P&A in Supp. of Def.'s Combined Opp'n to Pl.'s Mot. for Summ. J. and Reply in Supp. of Its Mot. for Summ. J., ECF No. 53 ("Def.'s Combined Reply & Opp'n"); and
- Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 55 ("Pl.'s Reply").

Those documents are certain of former Secretary Hillary Clinton's daily schedules,[2] and the withholdings allegedly pertain "only to information that identifies the subject matter and attendees of sensitive meetings concerning national security matters, such as certain meetings of the National Security Council." *Id.* ¶¶ 7-8. Plaintiff does not know enough to say whether Defendant's limitation is true, but Plaintiff disagrees with the invocation of this exemption. Pl.'s Resp. to Def.'s Stmt. of Material Facts Not in Dispute and Stmt. of Material Facts in Supp. of Cross-Mot. for Summ. J., ECF No. 52-1 (collectively, "Pl.'s Stmt."), ¶ 8 (response to Def.'s Stmt.); *id.* ¶ 1 (Plaintiff's further statement of material fact).

The parties briefed cross-motions for summary judgment. Eric F. Stein filed a declaration in support of Defendant State's withholdings. Eric F. Stein, ECF No. 51-2 ("Stein Decl.").

The Court exercised its discretion to grant Plaintiff's request for *in camera* review of the contested withholdings, and held in abeyance the remainder of Plaintiff's [52] Cross-Motion for Summary Judgment as well as State's [51] Motion for Summary Judgment. July 5, 2019 Order, ECF No. 56. At the Court's instruction, State submitted the documents *ex parte*, and the parties responded to the Court's request for any pertinent new authority. Def.'s Notice of Delivery of Documents for *in Camera* Inspection, ECF No. 57; Joint Notice of Pertinent New Auth., ECF No. 58 (reporting only a case previously identified by the Court).

Now that the Court has reviewed the withholdings *in camera*, the remainder of the pending motions is ripe for decision.

---

[2] The dates of those schedules are identified as follows in the agency's affidavit: October 20, 2009; March 9, 2010; November 16, 2010; September 19, 2011; October 5-17, 2011; June 12-15, 2012, and September 27, 2012. Decl. of Eric F. Stein, ECF No. 51-2 ("Stein Decl."), ¶ 7. Consulting the documents themselves shows that June 12, 2012, and June 15, 2012, schedules are included, but no schedules appear for any days in between.

3

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations omitted) (internal quotation marks omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a *de novo* review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are . . . exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (alteration in original). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (internal quotation marks omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil*

4

*Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Because Plaintiff does not challenge the adequacy of Defendant's search for records responsive to Plaintiff's FOIA request, the sole issue before the Court is whether the redactions to seven of former Secretary Clinton's daily schedules fall under FOIA Exemption 5.[3]

Mr. Stein's declaration explains Defendant's view of how the remaining issues arose:

> State disclosed in part these daily schedules because it determined that they contained information responsive to Judicial Watch's request for documents concerning former President Clinton's speeches or referenced a scheduled dinner with a foreign leader with whom the former President had a personal relationship. State has determined that the information it withheld in these daily schedules is not responsive to Judicial Watch's FOIA request.

Stein Decl. ¶ 8. Although Plaintiff views these documents as responsive, *e.g.*, Pl.'s Stmt. ¶ 7, the Court need not decide the issue; rather, the Court addresses only the application of the exemption.

In their briefing, the parties generally have not differentiated between the documents, or between redactions to those documents under Exemption 5. Defendant does indicate that some of the withheld information "concerned meetings of the [NSC]," while presumably other withheld

---

[3] Defendant also made certain redactions to these documents under FOIA Exemption 6, which allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). However, Plaintiff has not challenged withholdings under Exemption 6.

5

information concerned "certain meetings even when the topic and attendees were not specified on the calendar." Stein Decl. ¶¶ 11, 15. This high-level, rather vague distinction in the public record protects the content of the documents. The Court shall address the specific documents but will redact that analysis from the version of this Memorandum Opinion that is made public, which is the only version that will be available to Plaintiff. Defendant alone shall receive the sealed version *ex parte*.

The Court has reviewed the documents *in camera*. Considering the arguments of the parties, as well as the Court's own review of the documents, the Court concludes that, with one possible exception, the redacted material falls under FOIA Exemption 5 and was rightfully withheld. Defendant may submit further information in order to justify its withholding in a single instance.

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify [for this exemption], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Over the years, it has been construed as protecting "those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Available privileges include the two that Defendant has invoked in this case: the deliberative process privilege and the presidential communications privilege. *Judicial Watch, Inc. v. U.S. Dep't of Defense* (*Judicial Watch II*), 913 F.3d 1106, 1109 (D.C. Cir. 2019).

6

Under the federal common law, the proponent bears the burden of demonstrating the applicability of any asserted privilege. *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n WD Energy Servs., Inc.*, 439 F.3d 740, 750 (D.C. Cir. 2006). To meet that burden, the proponent must establish the claimed privilege with "reasonable certainty." *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980). Specifically, the proponent must adduce competent evidence in support of "each of the essential elements necessary to sustain a claim of privilege." *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000). The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *In re Application of Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). Where the proponent fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met. *TRW*, 628 F.2d at 213.

Because the Court shall conclude that Defendant has satisfied the presidential communications privilege, the Court need not reach the deliberative process privilege.

### A. Presidential Communications Privilege

Defendant asserts that all the redacted events in the schedules are covered by the presidential communications privilege. That privilege ensures that the President can receive "frank and informed opinions from his senior advisers" who may otherwise "'be unwilling to express [those views] except privately.'" *Judicial Watch II*, 913 F.3d at 1110 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)) (internal quotation marks omitted).[4] The shelter of this privilege is "properly invoked with respect to 'documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential.'" *Id.* at

---

[4] The Court does not shy away from relying liberally on *In re Sealed Case* and *Judicial Watch I* and *II* regarding this privilege, particularly because the precedent is slimmer than for the deliberative process privilege.

7

1111 (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)). And it can be invoked by not only the President, but also his advisors, to insulate their communications "in the course of preparing advice for the President . . . even when these communications are not made directly to the President." *Id.* (alteration in original) (internal quotation marks omitted). The standard is whether the documents were "'solicited and received' by the President or his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Judicial Watch, Inc. v. Dep't of Justice (Judicial Watch I)*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (quoting *In re Sealed Case*, 121 F.3d at 752). Although some of the advisors' staff can qualify, the Court of Appeals has expressly excluded "staff outside the White House in executive branch agencies." *Judicial Watch II*, 913 F.3d at 1111 (internal quotation marks omitted). This privilege "must 'be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected.'" *Id.* (quoting *In re Sealed Case*, 121 F.3d at 752). "Unlike the deliberative process privilege . . . the presidential communications privilege . . . 'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'" *Judicial Watch I*, 365 F.3d at 1113-14 (quoting *In re Sealed Case*, 121 F.3d at 745). A few FOIA cases construing *In re Sealed Case*—a non-FOIA case—elucidate the relevant considerations.

In *Judicial Watch I*, the Department of Justice argued that the presidential communications privilege shielded a variety of documents that generally concerned its pardon recommendations to the President. *See id.* at 1111. These communications passed through the Offices of the Pardon Attorney and/or the Deputy Attorney General, each of which was "at least twice removed from the President." *Id.* at 1117. The Court of Appeals found this to be a clear extension beyond the limitation in *In re Sealed Case* to documents "solicited or received" by the President or his inner circle

8

in the White House. *Id.* at 1114 (internal quotation marks omitted). The problem was that the communications at the level of these Department of Justice offices were not "revelatory of his deliberations," nor did they "pose a risk to the candor of his advisers." *Id.* at 1116 (internal quotation marks omitted).

The President's deliberations were at risk of exposure, however, in *Judicial Watch II*. As the President evaluated options for capturing or killing Osama bin Laden in a targeted attack on his compound, the President and unspecified "top national security advisers" sought the views of counsel in certain national security agencies, who in turn prepared memoranda "memorializ[ing]" their advice. *Judicial Watch II*, 913 F.3d at 1110, 1113 (internal quotation marks omitted). At issue were memoranda by the Pentagon General Counsel, CIA General Counsel, National Security Council Legal Adviser, and Joint Chiefs of Staff Legal Adviser. *Id.* at 1109. Because those memoranda were "documents . . . that reflect presidential . . . deliberations and that the President believes should remain confidential," the Court of Appeals found that they were properly withheld under the presidential communications privilege. *Id.* at 1113 (alterations in original) (internal quotation marks omitted). "Disclosure of the memoranda would [have] reveal[ed] the President's deliberations." *Id.*

There are several issues with applying the presidential communications privilege to portions of former Secretary Clinton's calendars. At the threshold is whether calendar entries can qualify for a privilege that seems to apply, on its face, "only to *communications.*" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 592 F. Supp. 2d 111, 118 (D.D.C. 2009), *appeal dismissed*, Nos. 09-5014, 09-5015, 2009 WL 4250490 (D.C. Cir. Nov. 13, 2009). In another case in this Circuit, Judge Royce C. Lamberth found that the privilege did not protect the Secret Service's logs of visitors to the White House or the Vice President's residence. *Id.* at

9

118-19. The basic name and visit information in those logs—which sometimes included the person requesting access for the visitor and/or the person whom the visitor was seeing—"shed[] no light on the content of communications between the visitor and the President or his advisors, whether the communications related to presidential deliberation or decisionmaking, or whether any substantive communications even occurred." *Id.* While there could conceivably be a visitor whose very presence suggested presidential deliberations—such as "a visit of a particular candidate during a Supreme Court vacancy"—Judge Lamberth determined that the nine named individuals did not fit the bill. *Id.* at 119. Unlike those logs, however, the entries on the Secretary's calendar in this case concerned national security-related events that would almost inevitably contain substantive, decision-oriented communications, quite likely with the President and/or one of his immediate White House advisors.

That intuition is consistent with a more recent decision in this Circuit, specifically about the Director of the Office of Management and Budget's calendar entries identifying NSC meetings. *Property of the People, Inc. v. Office of Mgmt. & Budget*, No. 17-cv-1677 (RC), 2019 WL 3891166, at *1 (D.D.C. Aug. 19, 2019). There, Judge Rudolph Contreras found four reasons why "any NSC meeting," including meetings of the Principals Committee ("PC") or Principals Small Group ("PSG"), "is a communication 'solicited and received' by the President's immediate advisers." *Id.* at *2-3; *see also* Stein Decl. ¶ 5 (referring to Principals Committee). First, neither Congress nor the President has invested the NSC with "'meaningful *non-advisory* authority.'" *Id.* at *3 (emphasis added) (quoting *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 565 (D.C. Cir. 1996)). Second was the recognition that "Council-wide meetings are generally chaired by the President himself," while the National Security Advisor or the Homeland Security Advisor typically leads meetings of the PC and PSG. *Id.* at *3-4. Those advisors lack Senate confirmation and

responsibilities "outside the walls of the White House," reinforcing that they are exclusively White House advisers without the "dual hat[s]" that make it harder for Cabinet officials to qualify for the privilege. *Id.* at *4 (quoting *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 320 F. Supp. 3d 162, 174 (D.D.C. 2018); *In re Sealed Case*, 121 F.3d at 752) (internal quotation marks omitted). Third, NSC's own records are not available under FOIA because, due to its proximity to the President, it does not qualify as an "agency" in this context. *Id.* at *5 (citing *Armstrong*, 90 F.3d at 567). And fourth is the concern that information about meeting dates and attendees could be aggregated with other information after the fact to "infer the specific issues that were discussed and possibly even the general substance of the conversations." *Id.* at *6 (citing *In re Sealed Case*, 121 F.3d at 750-51).

This Court agrees with Judge Lamberth's and Judge Contreras's analyses. Just as a White House log reflecting a particular individual at a particular time could all but confirm she deliberated with the President or his immediate White House advisor about a given topic, so too an entry on Secretary Clinton's schedule reflecting a meeting with the President or an immediate White House advisor at a particular time could give away sensitive information about its contents. More specifically, the Secretary's participation in a meeting of the NSC or one of its sub-units on a particular date and time—particularly if accompanied by a list of other attendees—threatens to divulge national security-sensitive information. And indeed, Defendant is concerned about precisely that. *See, e.g.*, Stein Decl. ¶ 12 (asserting that certain NSC meeting title and attendee information was withheld because they "reflect the nature, content, and timing of internal Executive Branch deliberations at the highest-levels concerning highly-sensitive national security meetings and the President's national security policy").

Nor has Plaintiff persuaded the Court that the redacted events reflect the development of "secret law." Pl.'s Combined Opp'n & Mem. at 7 (internal quotation marks omitted) (quoting *Sterling Drug, Inc. v. Fed. Trade Comm'n*, 450 F.2d 698, 713 (D.C. Cir. 1971) (Bazelon, C.J., concurring in part and dissenting in part)) (citing, e.g., *Rose*, 425 U.S. at 361; *Schwartz v. IRS*, 511 F.2d 1303, 1305 (D.C. Cir. 1975)). Recently the Court of Appeals rejected Plaintiff's argument in what appear to be similar circumstances:

> The materials Judicial Watch seeks do not constitute or establish "law" in the sense of setting forth a decision that binds subordinates or a regulated party. Rather, the materials document advice given up the chain to someone (the President) who then made a decision. The government's declaration explains that the advice contained in the memoranda was not an "authorization to conduct a given activity, but, rather, one step in the Executive branch deliberations."

*Judicial Watch II*, 913 F.3d at 1113 (citation omitted). Here too, the events on Secretary Clinton's calendars presumably would involve advice to the President or his immediate White House advisors to guide their development of policies. Plaintiff has not given the Court any reason to believe that the events themselves consist of "'opinions and interpretations which embody [an] agency's effective law and policy.'" *Id.* (quoting *Sears, Roebuck & Co.*, 421 U.S. at 153).

The Court shall analyze the specific redactions as follows, and shall redact this discussion from the public version of this Memorandum Opinion for national-security purposes.















\*\*\*

With one potential exception, the Court has concluded that Defendant's redactions are entitled to protection under the presidential communications privilege. The Court shall provide Defendant with an opportunity to submit an *ex parte* filing describing the context of the redaction that the Court has questioned above. That filing shall also identify any incorrect factual premises on which the Court has relied as to other redactions.

### B. Segregability

The Court must make a separate finding as to whether any portion of the withheld information could have been segregated and released. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999). "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1167 (D.C. Cir. 2011) (internal quotation marks omitted).

The presidential communications privilege protects the entirety of a document to which it applies. *In re Sealed Case*, 121 F.3d at 745. It seems to follow, *a fortiori*, that a redaction protected under this privilege need not be parsed for segregable material.

In the alternative, having reviewed all the redacted information as well as Mr. Stein's declaration, the Court is satisfied with his assessment that no reasonably segregable information has been withheld. *See* Stein Decl. ¶ 16 ("State has determined that there is no additional, meaningful non-exempt information that can be segregated and released."). Any non-exempt information contained in the withheld information is "inextricably intertwined with exempt portions." *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS-in-PART and HOLDS-in-ABEYANCE-in-PART** Defendant's [51] Motion for Summary Judgment and **DENIES-in-PART and HOLDS-in-ABEYANCE-in-PART** Plaintiff's [52] Cross-Motion for Summary Judgment. The Court concludes that, with one potential exception, the redactions are exempt from FOIA under Exemption 5 due to the presidential communications privilege. By **SEPTEMBER 16, 2019**, De-

19

fendant shall submit further information *ex parte* about the one redaction that the Court has identified in the sealed, *ex parte* portion of this Memorandum Opinion. That filing shall also identify any incorrect factual premises on which the Court has relied as to other redactions.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 5, 2019

/s/<br>COLLEEN KOLLAR-KOTELLY<br>United States District Judge